## TAYLOR v. NOBLE and another.

1. AGREEMENT—EQUITY.—T. and R. were squatters on certain public lands, and had improved them. T. applied to N. for a loan of money to enter the land, which was made and accepted upon condition that N. was to enter the land in his own name to secure repayment, and he was to have the right to convey one-half thereof to R. within one year if he should see fit to do so. Subsequently, and within the time prescribed, N. conveyed one-half of the premises to R. upon his making payment of one-half of the money advanced, with interest, and T. subsequently filed a bill against N. and R. for a conveyance of the entire premises. *Held*, that whether there was a technical borrowing of money by T. or not, so that he became liable for the whole, still N. had a right to dictate the terms upon which he would advance it, and T., by accepting it, became bound by the terms, and was not entitled to a conveyance of the entire premises.

(2 *Chand.* 73.)

APPEAL from the decree of the Circuit Court for *Dodge* County.

The appellant filed his bill, claiming and alleging thereby that in the year 1846 he applied to the defendant, *Noble*, for the loan of $200 for one year, at an interest of twelve per cent. *per annum*, in order to enter for the complainant (the appellant) certain lands belonging to the government, within the Green Bay district, and proposed to give as security for such loan the land to be located, and upon which the complainant then lived, and that the complainant would, within one year, or within a reasonable time afterwards, pay the defendant *Noble* such loan, at the rate per cent. aforesaid, and, upon such repayment, *Noble* should convey the land to complainant (the agreement being that the land should be entered in the name of *Noble*) by a good title; that upon the proposed conditions the defendant loaned the before mentioned sum of money, and upon repayment of the money and interest, defendant was to reconvey the premises to complainant; that upon the receipt of the money, complainant entered the land in question in the name of defendant, *Noble*, and took

for him the proper certificate, and delivered the same to him; complainant remained in possession of the land, as had been previously agreed upon between him and *Noble;* that in May, 1847, complainant offered to repay the loan aforesaid to *Noble*, and then demanded of him a conveyance of the premises; but *Noble* refused to receive the money or convey the premises, but agreed to extend the time of the payment of the loan until the first of July then next ensuing; that before the expiration of the time granted, complainant caused to be tendered to *Noble* the amount of the loan, with interest, and demanded a conveyance of the premises; but *Noble* refused to receive the money or give the conveyance; that at about the first of July, 1847, *Noble*, with his wife, conveyed the west half of the quarter section by deed to *Rogers*, one of the defendants, and put him into possession.

The bill prayed a conveyance of the whole of the land from *Noble* and *Rogers*, and their respective wives, on payment of the loan and interest, and offered the payment of the same. The bill was subsequently amended by alleging that *Rogers* had executed a mortgage upon the premises to *Woodworth*, and making him by said amendment a party defendant.

The defendant, *Noble*, in his answer denied that he entered into the alleged agreement, or loaned the complainant the money alleged in the bill, or agreed at any time to convey the complainant the land, as alleged in the bill. He sets up that in June, 1846, the complainant and one Rich came to him and stated that complainant had a pre-emption claim on the N. W. quarter of section 23, which had expired, and that he, complainant, wanted to secure the land. Defendant replied that he thought it could be secured, that he might help complainant, and would see him again; that shortly afterwards Rich stated to defendant that there was a difficulty between complainant and defendant *Rogers*, the brother-in-law of complainant, in regard to the land, and advised him to do nothing about it. Defendant stated that if there was

likely to be any difficulty, he would have nothing to do with the land ; that shortly after this, the complainant came to the defendant and desired him to enter the land or to loan him, the complainant, the money with which he could do it ; that defendant declined doing either on account of the pending difficulty with *Rogers ;* that soon after the last mentioned interview, complainant called upon defendant again, at which time, at complainant's solicitation, it was agreed upon by and between complainant and defendant, no one else being present, that defendant would enter the land in his own name, and that at the end of a year he would convey eighty acres thereof to complainant upon his paying $100 and interest at twelve per cent., and that defendant would convey to the defendant *Rogers* the other eighty acres upon like payment by him ; but if defendant should not wish so to convey to said *Rogers*, he would convey the whole to complainant ; that under this arrangement defendant entered the land, and upon no other, and paid to Martin Rich $200 to enter the lands in defendant's name, and that Rich did enter it, and returned to defendant a duplicate certificate ; that a short time before, the defendant *Rogers* stated to the defendant *Noble* that he, *Rogers*, had a pre-emption claim on the same land, and was working it, and desired to hire the money to enter it, but defendant declined to help him ; that defendant is informed and believes that after the land was entered as before stated, all differences between complainant and defendant *Rogers* in respect of the land were settled by their submitting them to arbitration, and that, by the decision of the arbitrators, the west half of the land was awarded to *Rogers*, and by said award *Rogers* was to pay complainant forty-nine dollars and sixty-nine cents, and should also pay to defendant *Noble* the government price of that part of the land, with interest from the time it was entered, at the rate of twelve per cent., and that *Rogers* complied with such award, and paid the complainant and defendant *Noble* in the manner directed by

the said award ; that defendant conveyed the land awarded to *Rogers* on the day alleged in the bill ; that on the same day of the conveyance to *Rogers*, defendant tendered a deed to complainant of the residue of the land ; complainant stated to defendant that if he could not have the whole of the land, he did not want any of it, and refused the deed ; that the complainant's solicitor, before the time of the conveyance by defendant to *Rogers*, came to him and tendered the necessary money to pay the sum advanced by defendant to enter the land, with the stipulated interest thereon, and demanded, in behalf of complainant, a deed to be given to him of the whole of the land, but defendant did not make the conveyance or receive the money ; denies that he ever agreed to convey the whole of the land to *Taylor*, or that he received a duplicate certificate from Rich as security for any purpose, but alleges that the certificate belonged to him, defendant ; sets up, from information and belief, that defendant *Rogers* went upon the land before it was entered, made improvements thereon, under the promise by complainant that he should have one-half the land, and that complainant had recognized the right of *Rogers* to the west half of the land ; that the defendant made the conveyance to *Rogers* in accordance with his stipulation made with complainant before the land was entered.

The defendant, *Rogers*, set up in his answer, that he received a deed of conveyance of one-half the land in question from the defendant, *Noble*, in pursuance of an agreement made between them ; that in the winter of 1846, complainant requested defendant to come to him, the complainant, stating that if defendant would come and live with him, defendant might have one-half the land in question ; that defendant did go ; complainant then told him he might have the west half of the land, and complainant went with defendant and ran the line ; complainant was then living on the east half of the land ; defendant then commenced working the land and built a house thereon in July, 1846, and has since resided there ;

that in June, 1847, defendant told complainant he thought complainant's pre-emption claim was not good, and complainant replied that if defendant thought so he might claim the said land, and defendant did, on the 10th day of June of that year, file his pre-emption claim to the whole ; that differences and disputes arose between defendant and complainant in regard to the land, which were submitted mutually to the arbitrament of Rice, McConnell and Perkins, who met and heard complainant and defendant, and awarded that defendant should have all the right and interest of complainant in the west half of the land, and that defendant should pay complainant forty-nine dollars and sixty-nine cents, and defendant paid the sum awarded to the complainant and supposed complainant satisfied.

Proofs were taken on the part of complainant and defendants in regard to the arrangement and agreement between the complainant and the defendant, *Noble*, in regard to the entering the land in question ; considerable of which were vague and uncertain, tending, on the one hand, to show that it was an agreement between complainant and *Noble* alone, in which the defendant *Rogers* had no right or interest, and on the other hand, that the defendant *Noble* reserved the right of conveying to the defendant *Rogers* one-half of the land, if in his own opinion, at the expiration of a year, he should think proper to do so.

Much vague and uncertain testimony was also produced on the part of the defendants, whereby it was claimed to have been shown that an arbitration had been had between the complainant and the defendant *Rogers*, as to the right of the latter to the one-half of the land, and an award to that effect made in his favor. But it did not appear that any other than an oral award was made, and that quite uncertain as to the terms and the subject-matters embraced in it. Proof also was taken, which, it was claimed by the defendants, established the fact that the complainant had induced the defendant

*Rogers* to move upon the land and improve it, under the promise from the complainant that he should have the one-half of it by paying the government price; but this proof was presumptive, rather than direct and positive.

The circuit court decreed a conveyance by the defendants, *Noble* and *Rogers*, to the complainant, of the whole of the quarter section, upon the payment to *Noble*, by the complainant, of two hundred dollars, and interest thereon, at the rate of twelve per cent. per annum.

From this decree the defendants appealed to this court.

*Collins & Billinghurst*, counsel for appellants, argued: 1. That the complainant's evidence did not establish the agreement set out in the bill. That if a contract be vague and uncertain, or the evidence to establish it be insufficient, equity will not enforce it. 2 Wheat. 336; 1 Young, 346; 3 Yerger, 18; 5 Wend. 638; 6 Johns. Ch. 222; 1 Des. 250.

2. That the answer set up a different agreement from that alleged by the bill. That in such a case a complainant could not have a decree unless he prove the contract he has set up *aliunde*, and that in this case the complainant had failed to do so. 1 Peters C. C. 380; 3 Mad. 33.

3. That the answer of a defendant is to be held controlling evidence until disproved by two witnesses or what is equivalent. Story's Eq. Pl., § 875; 1 Story, 172. That the oath of the defendant to the answer put in by him, cannot be waived by the bill except by the consent of the parties or the order of the court. 1 Hoff. Ch. Pr. 234; 2 Paige, 307; 1 Barb. Ch. Pr. 85, 107, 143.

4. That if the agreement set out in the bill had been proved as stated, it was afterwards varied by *parol* upon a consideration paid therefor. Hence equity will not decree a performance. 2 Story's Eq. Jur. 92, § 770, note 1, p. 95. That the consideration consisted of the relinquishment by *Rogers* of his pre-emption of the land.

5. That the acquiescence of *Taylor* and *Rogers*, in the

award made between them, embraced and settled the conflicting claims for the land.    5 Littell, 71.

6. That the submission to arbitrate the disputes between *Taylor* and *Rogers* being voluntary, and they acquiescing in the award made, and *Rogers* having paid, and *Taylor* received the sum awarded, though not such an arbitration as the statute contemplates, yet the parties to it were bound and concluded by it so far as chancery is available to give relief.    4 Pick. 507 ; 2 Story's Eq. Jur. 926, § 1458.

7. That complainant never, in fact, offered to return to *Rogers* the amount awarded by the arbitration.

8. That the answers were fully sustained by the proofs.

*Connit & Gillet*, for appellees, argued :    1. That the equitable title of the land in question was in complainant, and that the defendants, *Noble* and *Rogers*, were his trustees.    1 Johns. Ch. 582 ; id. 566 ; Story's Eq. Jur., § 1260.

2. That no valid contract had been shown under which *Rogers* could claim any part of the land.

3. That the assumed arbitration between complainant and *Rogers*, had no validity or force to affect the title of the land in the complainant.

4. That if there were any validity or force in the arbitrament and award, it could only be enforced by a bill in chancery.    It could not be enforced in this suit unless such a case had been proved as would have entitled *Rogers* to a decree for a specific performance, had he filed a bill for that object.

5. Whether the award was valid or not, *Noble* acquired no right or power to convey to *Rogers* as based upon such award, and in hostility to the claim of *Taylor*.

6. The award was not in conformity with the statute.    Rev. Stat. Ter. 279.

7. The decree should be modified so as to give *Noble* interest on the money advanced by him up to the time it was tendered to him by complainant, and as to all else it should be *affirmed*.

HUBBELL, J.   *Taylor*, the complainant, and *Rogers*, one of the defendants, who are brothers-in-law, in June, 1846, re- sided on the lands which are the subject of the present contro- versy.   Both had made substantial improvements, but neither had a pre-emption right, nor the means of purchasing the land from the government.   In this state of things, *Taylor* applied to *Noble* for a loan of two hundred dollars to enter the land, and an arrangement was finally made by which the money was advanced.   *Noble*, however, declined wholly to interfere in the matter, unless he could have the right to convey one-half of the land to *Rogers*, in case he should think it proper to do so, within one year.   Subject to this express condition, the money was put into the hands of *Taylor*, and the title of the land was taken in *Noble's* name, to secure the repayment of the money, with twelve per cent. interest, at the end of one year.   Pursuant to the alleged stipulation, *Noble* conveyed eighty acres of the land to *Rogers*, on the payment to him of one-half of the money advanced and interest.

*Taylor* files his bill to compel a conveyance to him, by the defendants, of the whole one hundred and sixty acres.

This is the whole case as I understand the testimony.   It is not material to inquire whether there was a technical borrow- ing of the money by *Taylor*, or whether he became liable to repay the whole principal and interest.   *Noble* advanced the money voluntarily, and had a perfect right to dictate the terms of the arrangement, and *Taylor*, by accepting it, became bound by those terms.

As the money was advanced with the alleged condition annexed, the conveyance to *Rogers* was perfectly legal and proper, unless there was some fraud or oppression in the pro- ceeding, and I can discover nothing of the kind.   On the con- trary, the motives and conduct of *Noble* seem to have been equitable and commendable, securing to both of the parties an equal share of the government land on which they had settled with the just expectation of obtaining a title.   Whether the

division lines were struck precisely where the respective interest of the occupants, if nicely balanced, would require, this court cannot determine, because the testimony does not show that any specific bound was fixed, in the arrangement between *Taylor* and *Noble*. It is enough that substantial justice was done.

Much testimony was produced to show that all the differences between the parties had been settled by a friendly arbitration before the filing of the bill. The binding force of a common law arbitration, when properly conducted, is not to be denied. But, in the present instance, the proceedings are quite too loose and uncertain to admit of their being adopted and enforced by this court, and this decision would not be materially varied if they were.

The decree of the circuit court is erroneous, for the reasons before stated, and it must be reversed, with costs.